RAND L. STEPHENS SBN 117229
LAW OFFICES OF RAND L. STEPHENS
1125 B ARNOLD DR. #278
MARTINEZ, CA. 94553
(510) 232-9335
rand@randslaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. ROBERT PETTIT, M.D. | Case No.: 3:07-cv-03358 JSW |
| Plaintiff, | COMPLAINT |
| vs. | 1. Wrongful Termination |
| | 2. Breach Of Contract |
| CONTRA COSTA MEDICAL SERVICES | 3. Whistleblowing |
| REGIONAL MEDICAL CENTER and DOES | 4. Violation Of Public Policy |
| ONE THROUGH TWENTY, Inclusive | 5. Breach of the Implied |
| | Covenant of Good Faith And |
| Defendants, | Fair Dealing |
| | 6. Age Discrimination |
| | |
| | CLAIM FOR PUNITIVE DAMAGES AND |
| | A CIVIL PENALTY |
| | **JURY TRIAL DEMANDED** |

Plaintiff C. ROBERT PETTIT, M.D. complains of Defendants and each of them and

demands a trial by jury of all legal issues and for claims alleges:

# FACTS COMMON TO ALL CLAIMS

1.      **JURISDICTION**: This Court has subject matter jurisdiction as to federal subject matter issues pursuant to 28 USC §1331 and pendant jurisdiction over related state claims.

2.      At all times herein mentioned, Plaintiff C. ROBERT PETTIT, M.D., a 65 year old, Board certified Otolaryngology, Head and Neck Surgeon, was employed by CONTRA COSTA MEDICAL SERVICES REGIONAL MEDICAL CENTER (hereafter: "REGIONAL MEDICAL CENTER"), a California quasi-municipal entity doing business in the county of Contra Costa.

3.      At all times herein mentioned Plaintiff was and is a resident of the city of Martinez, County of Contra Costa, State of California.  Plaintiff has resided in the city of Martinez for a number of years and at all times has enjoyed a good reputation both generally and in his occupation.

4.      Plaintiff was employed by REGIONAL MEDICAL CENTER from February 1, 2005 through March 3, 2007.

5.      Defendant REGIONAL MEDICAL CENTER, DOES One through Twenty, and management employees (hereinafter referred to collectively as "THE REGIONAL MEDICAL CENTER") were, and at all times herein mentioned, doing business as CONTRA COSTA MEDICAL SERVICES REGIONAL MEDICAL CENTER in the State of California, and the County of Contra Costa. Said Entity is a resident of Martinez, California and that is its principal place of business, and Defendant does business within the state under the name listed in the caption, together with other names that are unknown. At all times herein relevant, Plaintiff worked for Defendant at REGIONAL MEDICAL CENTER in the city of Martinez, where the conduct relating to the torts and statutory violations and other wrongful conduct occurred.

6.      The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES One through Ten, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the wrongful conduct of these defendants.

7.      Plaintiff is informed and believes and thereon alleges that DOES Eleven through Twenty, and each of them, were and are the managerial employees of Defendant REGIONAL MEDICAL CENTER and DOES One through Ten. In doing the acts and things hereinafter alleged, these management employees and DOES Eleven through Twenty were acting within the course and scope of their agency and/or employment and with the permission and consent of Defendant REGIONAL MEDICAL CENTER and DOES One through Ten.  Said management employees were in such a significant position that they were able to determine the policy of the Defendant entity REGIONAL MEDICAL CENTER.

8.      The term "Defendant Employer" will refer to Defendant REGIONAL MEDICAL CENTER, and DOES One through Ten acting by and through itself and its management employees and DOES Eleven through Twenty, and each of them, unless otherwise indicated.

9.      Plaintiff is informed and believes and thereon alleges that each Defendant acted with knowledge, instructions, and ratification of each of the other supervising Defendants.

10.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the above-mentioned Defendants was the agent and employee of each of the

remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

11.     Plaintiff was hired by Defendant as Ear Nose and Throat (ENT) Specialist on February 1, 2005 under a written contract of employment. The contract term ran from February 1, 2005, through January 31, 2008, with a limit of $1,117,000. A true and correct copy of the written agreement is attached as "Exhibit 1".

12.     This is a complaint by a terminated employee against the defendant employer for damages arising out of the termination of employment in breach of Plaintiff's written contract and for Defendant's age discrimination against Plaintiff and retaliation for Plaintiff's whistle blowing. Plaintiff seeks general, special, compensatory, incidental and consequential, and punitive damages.

**FIRST CLAIM**

**TORTIOUS WRONGFUL TERMINATION**

13.     As a First, separate and distinct claim and cause of action, Plaintiff complains against Defendant REGIONAL MEDICAL CENTER and DOES ONE THROUGH TEN, and for a cause of action alleges:

14.      At all times herein mentioned:

  a.   Defendant REGIONAL MEDICAL CENTER was and is the name under which REGIONAL MEDICAL CENTER operates in this jurisdiction, and said entity is a California quasi-municipality and subdivision of the County of Costa doing business within the State of California, with its headquarters in the City of Martinez, California.

b.  Plaintiff C. ROBERT PETTIT, M.D. was employed by REGIONAL MEDICAL CENTER for approximately two years. Plaintiff worked for Defendant in the city of Martinez, in the County of Contra Costa on February 1, 2005. Plaintiff was terminated on March 3, 2007. The defendant employer was wrong and tortuous, as will be described below.

15.     Plaintiff C. ROBERT PETTIT, M.D. was employed by REGIONAL MEDICAL CENTER under a written contract of employment for a term of three years. In accordance with Paragraph 2, Special Conditions of the contract, the cancellation of contract required 60 days' notice. Plaintiff performed his job in a satisfactory manner; and discipline, demotion or discharge, if any, would only be for good cause proven and then would be carried out only in accordance with the stated written policies of the employer. Plaintiff therefore, had an expectation of continued employment with discharge only for good cause proven based upon the following:

16.     Plaintiff worked for Defendant approximately two years;

17.     Plaintiff occupied a position of importance and responsibility as a medical doctor and as a board certified Ear Nose and Throat (ENT) Specialist. He was one of three ENT doctors at the REGIONAL HEALTH CENTER, and he saw substantially more clinic patients and performed more surgery than either of his colleagues.

18.     Since 1975, Dr. Pettit has held a position of Assistant Clinical Professor at UCSF School of Medicine. He was the only ENT doctor at the REGIONAL HEALTH CENTER with an academic appointment.

19.     Since 2002, Dr. Pettit has been a Medical Consultant for the Enforcement Division of the Medical Board of California, a position that requires him to make daily decisions about what practice behavior constitutes a departure from the Standard of Care.

20.        Plaintiff believed all laws of the United States and of the State of California, including prohibition against age discrimination in the workplace and retaliation for whistle blowing, were implied contract terms of his employment; this was evidenced by the posting of various labor regulations at the workplace. Plaintiff further alleges that this created a duty of care for Defendant to follow these laws.

21.        Until the events described below, Plaintiff never received any significant criticism regarding his work performance. Based on the foregoing, Defendant owed a duty to Plaintiff to operate its business with the standard of care owed by an employer to an employee and to follow the laws of the United States and the State of California.

22.        On August 29, 2006, the ENT doctor on emergency call, Dr. Keating, did not leave his home and go to the hospital to see three ENT patients who presented to the emergency room that night, two of which had potentially life-threatening problems. Dr. Keating also did not come to the hospital to see the patients the next morning, and he left for vacation in the afternoon without notifying any other ENT doctors about the patients.

23.        As a result of Dr. Keating's failure to come to the hospital, one patient, with a nose-bleed, bled to the point of anemia that required hospitalization, and he had painful packing placed in both nostrils by non-specialists.  The second patient had a peritonsillar abscess, a painful collection of pus behind the tonsil, which caused swelling in his throat severe enough to cause symptoms of airway obstruction, swallowing difficulty, and admission to the intensive care unit, and which could have required immediate draining or even emergency tracheostomy due to the threat to the airway. The third patient, a diabetic, did not receive ENT evaluation of a severe facial infection that could have required immediate incision and draining.

24.     On or about September 5, 2006, Dr. Pettit sent an email to the ENT Section Chief, Dr. Corcoran, notifying her of these dangerous incidents of substandard care. He stated that dangerous incidents were repeatedly occurring at REGIONAL MEDICAL CENTER because of the long distance that on-call doctors live from the facility and the failure of Defendant to demand they perform adequate medical services.

25.     On or about September 20, 2006, Dr. Pettit brought up the events of August 29, 2006 at an ENT section meeting. Dr. Keating then threatened Dr. Pettit at the meeting with "warfare".

26.     After that meeting, and for the first time, Dr. Keating began writing inflammatory emails to Plaintiff questioning his management of patients. Dr. Keating sent copies of the emails to Dr. Corcoran and Dr. Berguer, Chief of Surgery.

27.     On November 28, 2006, Dr. Berguer called Dr. Pettit into his office and verbally threatened to fire Dr. Pettit for his "style of practice" and "inability to get along with Dr. Keating."   No disciplinary action was taken against Dr. Keating, and Defendant made no effort to remedy the problem and made no effort to improve medical care.

28.     On November 29, 2006, Dr. Pettit submitted a formal, written complaint to Dr. Berguer, documenting the three incidents of August 29, 2006, and stating that the medical center policies and practices were contributing to patient/public endangerment and a deviation from standard of care.  Dr. Pettit also presented the same letter to Dr. Jeffrey Smith, Chief of Staff.

29.     As a proximate result of Defendant's substandard medical care, a 54 year old patient unnecessarily bled to death on the ward of REGIONAL MEDICAL CENTER while the on-call ENT doctor stayed at home, two days after the patient underwent a tracheostomy on February 22, 2007. As a proximate result of REGIONAL MEDICAL CENTER'S substandard

medical care, a patient was seen in the emergency room of REGIONAL MEDICAL CENTER on or about January 27, 2007 because of a fishbone foreign body in the throat resulting in pain, swelling, and dysphagia that had been worsening over several days. She was sent home after a telephone consultation with the ENT doctor on call; several days later she was seen routinely in the out-patient clinic, where a large, imbedded fishbone was removed from the tongue base.

30.    On January 12, 2007, Plaintiff's counsel sent a letter to Dr. Smith advising him of Dr. Pettit's rights in relation to public policy.

31.    Dr. Pettit filed a complaint with the State Department of Fair Employment of Housing (DFEH), which was served to the defendants on February 12, 2007. See Exhibit 2, attached hereto.

32.    REGIONAL MEDICAL CENTER cancelled Plaintiff's employment contract as of March 3, 2007. The cancellation letter was dated January 3, 2007, allegedly providing the 60 days' notice required under the contract. See Exhibit 1, attached here to. Although the letter could have easily been hand delivered to Plaintiff, the letter was instead posted by mail on January 26, 2007 and received by Plaintiff in the mail on or about January 29, 2007, providing substantially less than 60 days' notice.

33.    The above termination was a wrongful termination and tortious of Plaintiff's employment. Defendants, and each of them, owed Plaintiff a duty not to discriminate against Plaintiff on the basis of his age or in retaliation for whistleblowing. Furthermore, Plaintiff was protected by California Government Code 12940, et seq., and other state laws that prohibit discrimination and retaliation.  These statutes create an important public policy.

34.    All conditions precedent had been satisfied and Plaintiff had fulfilled all conditions and obligations to be performed on his part under the written contract.

35.     The termination of Plaintiff was a breach of the duties Defendants owed Plaintiff in his employment, and as such breached Defendant's standard of care not to terminate whistle blowers and constituted a tortuous termination of the employment contract by the employer in violation of public policy.

36.     As a proximate result of the tortuous conduct, Plaintiff has suffered the loss of past and future income as compensatory damages in an amount according to proof.

37.     Plaintiff also lost benefits and other consequential and incidental damages. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for prejudgment interest.

38.     As a proximate result of the aforesaid acts of Defendants, Plaintiff became mentally upset, frustrated, angered, humiliated, depressed, vexed, distressed and aggravated. The emotional distress was severe and has resulted in mental and emotional injuries. Plaintiff therefore claims general damages for such mental distress and aggravation in a sum according to proof.

39.     As a proximate cause of the breach of duty by Defendants, Plaintiff suffered personal injuries and special damages for health care for his personal injuries. Plaintiff seeks an award for these past and future damages according to proof.

40.     Plaintiff filed a timely claim under California's Tort Claims Act; said claim was rejected by this quasi-municipal organization, and this claim was timely filed thereafter.

**SECOND CLAIM**
**BREACH OF CONTRACT**

As a Second, separate and distinct claim and cause of action, Plaintiff complains against Defendants and each of them, for a cause of action alleges:

41.     Plaintiff incorporates by reference paragraphs 1 through 40 as though fully pleaded here.

42.     On or about February 1, 2005 Plaintiff entered into a written employment agreement with REGIONAL MEDICAL CENTER, and Plaintiff was hired by Defendant as Ear Nose and Throat (ENT) Specialist.  A written contract creating the obligation in which this action is brought, was entered in the City of Martinez, County of Contra Costa, and a true and correct copy is attached as Exhibit 1.

43.     The contract term ran from February 1, 2005, through January 31, 2008, with a limit of $1,117,000. In accordance with Paragraph 2, Special Conditions of the contract, the cancellation of contract required 60 days' notice.

44.     On February 1, 2005 REGIONAL MEDICAL CENTER cancelled Plaintiff's employment contract as of March 3, 2007. The cancellation letter was dated January 3, 2007, allegedly providing 60 days' notice. Although the letter could have easily been hand delivered to Plaintiff, the letter was instead posted by mail on January 26, 2007 and received by Plaintiff in the mail on or about January 29, 2007, providing substantially less than 60 days' notice.

45.     Defendant stopped making payments on the contract after March 3, 2007, owing Plaintiff one third of the contract amount of $1,117,000. As a proximate result of Defendant's failure to pay, Defendant has breached the written agreement.

46.     Plaintiff has performed all obligations and conditions to be performed on his part and all conditions precedent have occurred.

47.     As a proximate result of Defendant's breach of contract, Plaintiff is entitled to the balance of $386,610.00 owed plus interest at the rate of 10% from March 3, 2007 to the date of judgment or January 31, 2008, whichever should last occur.

48.     Plaintiff filed a timely claim under California's Tort Claims Act; said claim was rejected by this quasi-municipal organization, and this claim was timely filed thereafter.

### THIRD CLAIM
### RETALIATION FOR WHISTLE BLOWING

As a Third, separate and distinct claim and cause of action, Plaintiff complains against Defendants and each of them, for a cause of action alleges:

49.     Plaintiff incorporates by reference paragraphs 1 through 48 as though fully pleaded here.

50.     At all times herein mentioned and at all times herein relevant, the State of California had a public policy, enunciated in Labor Code §1102.5, to protect whistle blowers and that statute protects whistle blowers from retaliation and discrimination for reporting unlawful and unethical conduct to a government agency, including a public entity employer. .

51.     On August 29, 2006, the ENT doctor on emergency call, Dr. Keating, did not leave his home and come to the hospital to see three ENT emergency patients who presented to the emergency room that night, two of which had potentially life-threatening problems. Dr. Keating also did not come to the hospital to see the patients the next morning, and he left for vacation in the afternoon without notifying any other ENT doctors about the patients.

52.     As a result of Dr. Keating's failure to come to the hospital, one patient, with a nose-bleed, bled to the point of anemia that required hospitalization, and he had painful packing placed in both nostrils by non-specialists.  The second patient had a peritonsillar abscess, a painful collection of pus behind the tonsil, which caused swelling in his throat severe enough to cause symptoms of airway obstruction, swallowing difficulty, and admission to the intensive care unit, and which could have required immediate draining or even emergency tracheostomy due to

the threat to the airway. The third patient, a diabetic, did not receive ENT evaluation of a severe facial infection that could have required immediate incision and draining.

53.     On or about September 5, 2006, Dr. Pettit sent an email to the ENT Section Chief, Dr. Corcoran, notifying her of these dangerous incidents of substandard care, and he stated that dangerous incidents were repeatedly occurring at REGIONAL MEDICAL CENTER because of the long distance that on-call doctors live from the facility.

54.     On or about September 20, 2006, Dr. Pettit brought up the events of August 29, 2006 at an ENT section meeting. Dr. Keating then threatened Dr. Pettit at the meeting with "warfare".  No disciplinary action was taken against Dr. Keating, and no efforts were made to correct the dangerous situation and improve medical care.

55.     After that meeting, and for the first time, Dr. Keating began writing inflammatory emails to Plaintiff questioning his management of patients. Dr. Keating sent copies of the emails to Dr. Corcoran and Dr. Berguer, Chief of Surgery.

56.     On November 29, 2006, Dr. Pettit submitted a formal, written complaint to Dr. Berguer, documenting the three incidents of August 29, 2006, and stating that the medical center policies and practices were contributing to patient/public endangerment and to a deviation from standard of care.  Dr. Pettit also presented the same letter to Dr. Jeffrey Smith, Chief of Staff.

57.     As a proximate result of Defendant's substandard medical care, a 54 year old patient unnecessarily bled to death on the ward of REGIONAL MEDICAL CENTER while the on-call ENT doctor stayed at home, two days after the patient underwent a tracheostomy on February 22, 2007. As a proximate result of REGIONAL MEDICAL CENTER's substandard medical care, a patient was seen in the emergency room of REGIONAL MEDICAL CENTER on or about January 27, 2007 because of a fishbone foreign body in the throat resulting in pain,

swelling, and dysphasia that had been worsening over several days. She was sent home after a telephone consultation with the ENT doctor on call; several days later she was seen routinely in the out-patient clinic, where a large, imbedded fishbone was removed from the tongue base.

58.     On January 12, 2007, Plaintiff's counsel sent a letter to Dr. Smith advising him of Dr. Pettit's rights in relation to public policy.

59.     On February 12, 2007 Dr. Pettit served Defendant with a complaint that he filed with the State Department of Fair Employment of Housing (DFEH), which alleged that Plaintiff was being harassed for whistle blowing. See Exhibit 2, attached hereto.

60.     REGIONAL MEDICAL CENTER cancelled Plaintiff's employment contract as of March 3, 2007, without just cause and in breach of the document's terms. Said breach of contract was in retaliation for Plaintiff's whistle blowing.

61.     As a result of the aforesaid acts of Defendants, Plaintiff has become mentally upset, frustrated, angered, humiliated, depressed, vexed, distressed and aggravated. The emotional distress was severe and Plaintiff has suffered injury within the last two years and said injury has resulted in mental and emotional injuries; Plaintiff is informed, believes and thereon alleges that these injuries require medical treatment; Plaintiff therefore claims general damages for such mental distress and aggravation in a sum according to proof.

62.     As a proximate result of the breach of contract, Plaintiff has suffered the loss of past and future income as compensatory damages in an amount according to proof.

63.     Plaintiff also lost benefits, stock options, profit sharing, and other consequential and incidental damages. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for prejudgment interest.

64.     Plaintiff filed a timely claim under California's Tort Claims Act; said claim was rejected by this quasi-municipal organization, and this claim was timely filed thereafter. Plaintiff is therefore entitled to a statutory penalty of $10,000.00 for the conduct of Defendant in retaliating against him for whistleblowing.

### FOURTH CLAIM
### VIOLATION OF PUBLIC POLICY

As a Fourth, separate and distinct claim and cause of action, Plaintiff complains against Defendants and each of them, for a cause of action alleges:

65.     Plaintiff incorporates by reference paragraphs 1 through 64 as though fully pleaded here.

66.     At all times herein mentioned and at all times herein relevant, the State of California and the United States Government had a public policy to protect whistle blowers, enunciated in statutes like Labor Code §1102.5, et seq. and case law, including, but not limited to *Tameny v. Atlantic Richfield*, to protect whistle blowers from retaliation and discrimination. Medical doctors have an ethical and legal duty to report sub-standard care, particularly treatment that endangers the health and safety of the public or that results in death.

67.     On August 29, 2006, the ENT doctor on emergency call, Dr. Keating, did not leave his home and come to the hospital to see three ENT emergency patients who presented to the emergency room that night, two of which had potentially life-threatening problems. Dr. Keating also did not come to the hospital to see the patients the next morning, and he left for vacation in the afternoon without notifying any other ENT doctors about the patients.

68.     As a result of Dr. Keating's failure to come to the hospital, one patient, with a nose-bleed, bled to the point of anemia that required hospitalization, and he had painful packing placed in both nostrils by non-specialists.  The second patient had a peritonsillar abscess, a

painful collection of pus behind the tonsil, which caused swelling in his throat severe enough to cause symptoms of airway obstruction, swallowing difficulty, and admission to the intensive care unit, and which could have required immediate draining or even emergency tracheostomy due to the threat to the airway. The third patient, a diabetic, did not receive ENT evaluation of a severe facial infection that could have required immediate incision and draining.

69.     On or about September 5, 2006, Dr. Pettit sent an email to the ENT Section Chief, Dr. Corcoran, notifying her of these dangerous incidents of substandard care, and he stated that dangerous incidents were repeatedly occurring at REGIONAL MEDICAL CENTER because of the long distance that on-call doctors live from the facility.

70.     On or about September 20, 2006, Dr. Pettit brought up the events of August 29, 2006 at an ENT section meeting. Dr. Keating then threatened Dr. Pettit at the meeting with "warfare". No disciplinary action was taken against Dr. Keating, and no efforts were made to correct the dangerous situation and improve medical care.

71.     After that meeting, and for the first time, Dr. Keating began writing inflammatory emails to Plaintiff questioning his management of patients. Dr. Keating sent copies of the emails to Dr. Corcoran and Dr. Berguer, Chief of Surgery.

72.     On November 29, 2006, Dr. Pettit submitted a formal, written complaint to Dr. Berguer, documenting the three incidents of August 29, 2006, and stating that the medical center policies and practices were contributing to patient/public endangerment and to a deviation from standard of care. Dr. Pettit also presented the same letter to Dr. Jeffrey Smith, Chief of Staff.

73.     As a proximate result of Defendant's continuing substandard medical care, a 54 year old patient unnecessarily bled to death on the ward of REGIONAL MEDICAL CENTER while the on-call ENT doctor stayed at home, two days after the patient underwent a

tracheostomy on February 22, 2007. As a proximate result of REGIONAL MEDICAL CENTER's substandard medical care, a patient was seen in the emergency room of REGIONAL MEDICAL CENTER on or about January 27, 2007 because of a fishbone foreign body in the throat resulting in pain, swelling, and dysphagia that had been worsening over several days. She was sent home after a telephone consultation with the ENT doctor on call; several days later she was seen routinely in the out-patient clinic, where a large, imbedded fishbone was removed from the tongue base.

74.     On January 12, 2007, Plaintiff's counsel sent a letter to Dr. Smith advising him of Dr. Pettit's rights in relation to public policy.

75.     On February 12, 2007 Dr. Pettit served Defendant with a complaint that he filed with the State Department of Fair Employment of Housing (DFEH). See Exhibit 2, attached hereto.

76.     REGIONAL MEDICAL CENTER cancelled Plaintiff's employment contract as of March 3, 2007, without just cause and in breach of the document's terms. Said breach of contract was in violation of public policy for Plaintiff's whistle blowing.

77.     As a result of the aforesaid acts of Defendants, Plaintiff has become mentally upset, frustrated, angered, humiliated, depressed, vexed, distressed and aggravated. The emotional distress was severe and Plaintiff has suffered injury within the last two years and said injury has resulted in mental and emotional injuries; Plaintiff is informed, believes and thereon alleges that these injuries require medical treatment; Plaintiff therefore claims general damages for such mental distress and aggravation in a sum according to proof.

78.     As a proximate result of the conduct of Defendant, Plaintiff has suffered general and compensatory damages for the loss of past and future income, in an amount in excess of $387,000.00, according to proof.

79.     Plaintiff also lost benefits, stock options, profit sharing, and other consequential and incidental damages. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for prejudgment interest.

80.     Plaintiff filed a timely claim under California's Tort Claims Act; said claim was rejected by this quasi-municipal organization, and this claim was timely filed thereafter.

## FIFTH CLAIM
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

As a Fifth, separate and distinct cause of action, Plaintiff complains against Defendants and each of them, for a cause of action alleges:

81.     Plaintiff incorporates by reference paragraphs 1 through 80 as though fully pleaded here.

82.     California law implies a covenant in each contract that each party will act in good faith and that neither party will frustrate the terms and purposes of the contract by acting in bad faith.

83.     Defendant acted in bad faith by failing to give 60 days notice of its intent to cancel the contract and eliminate the primary income of Plaintiff.

84.     Defendant acted in bad faith by firing Plaintiff for pretexual reasons (elimination of position) in order to cover up its acts of discrimination against Plaintiff for his whistle blowing activities, by retaliating against Plaintiff for his whistle blowing to government

authorities, and in violating important public policies intended to protect the public from the type of harm which occurred here.

85.     Defendant's conduct breached the implied covenant of good faith and fair dealing,  and this breach was a proximate cause of Plaintiff's injuries.

86.     As a result of the aforesaid acts of Defendants, Plaintiff has become mentally upset, frustrated, angered, humiliated, depressed, vexed, distressed and aggravated. The emotional distress was severe and Plaintiff has suffered injury within the last two years and said injury has resulted in mental and emotional injuries; Plaintiff is informed, believes and thereon alleges that these injuries require medical treatment; Plaintiff therefore claims general damages for such mental distress and aggravation in a sum according to proof.

87.     As a proximate result of the breach of contract, Plaintiff has suffered the loss of past and future income as compensatory damages in an amount in excess of $387,000.00, according to proof.

88.     Plaintiff also lost benefits, stock options, profit sharing, and other consequential and incidental damages. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for prejudgment interest.

89.     Plaintiff filed a timely claim under California's Tort Claims Act; said claim was rejected by this quasi-municipal organization, and this claim was timely filed thereafter.

**SIXTH CLAIM OF ACTION**
**AGE DISCRIMINATION**

As a Sixth, separate and distinct cause of action, Plaintiff complains against Defendants and each of them, for a cause of action alleges:

90.     Plaintiff incorporates by reference paragraphs 1 through 89 as though fully pleaded here.

91.     At all times herein relevant, the Fair Employment and Housing Act (FEHA) California Government Code § 12920, *et seq.*, Title VII, 42 USC 200, and the Age Discrimination in Employment Act (ADOA), 29 USC §621-634, were and are in full force and effect. These statutory provisions and related case law forbid the discrimination in employment based on the age of the employee.

92.     Plaintiff, at the time of his termination was 65 years of age and within the class sought to be protected by the FEHA and other state and federal laws protecting workers from age discrimination. Plaintiff is approximately 20 years older than the other two ENT doctors at REGIONAL MEDICAL CENTER.

93.     Defendant began a campaign of harassment based on Plaintiff's advanced age with the professed intent to have him quit due to stress. As a proximate result of this harassment, Plaintiff was constructively terminated as of March 3, 2007.

94.     At all times herein mentioned Plaintiff was performing his job satisfactorily.

95.     Plaintiff's age was a substantial factor in the termination of Plaintiff by defendant.

96.     The termination violates the FEHA § 12940 *et seq.* of the Cal. Gov. Code and is age discrimination which has proximately caused injuries to the Plaintiff. Plaintiff is entitled to the equitable relief of reinstatement to her position, with back pay.

97.     As a result of Defendants' conduct, Plaintiff has suffered special damages for medical care and counseling in an amount according to proof.

98.     As a proximate result of the discrimination based on Plaintiff's age, Plaintiff has suffered the loss of past and future income as compensatory damages in an amount according to proof.

99.     Plaintiff also lost benefits, stock options, profit sharing, and other consequential and incidental damages. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for prejudgment interest.

100.    As a result of the aforesaid acts of Defendants, Plaintiff has become mentally upset, frustrated, angered, humiliated, depressed, vexed, distressed and aggravated. The emotional distress was severe and Plaintiff has suffered injury within the last year and said injury has resulted in mental and emotional injuries; Plaintiff is informed, believes and thereon alleges that these injuries require medical treatment; Plaintiff therefore claims general damages for such mental distress and aggravation in a sum according to proof.

101.    Because the acts taken toward Plaintiff were carried out by managerial employees acting in a deliberate, cold, callous and intentional manner in order to maliciously injure and damage Plaintiff, and by fraudulent means Plaintiff requests the assessment of punitive damages against Defendants, and each of them, in an amount according to proof.

102.    Plaintiff filed a Complaint with the Department of Fair Housing and Employment [DFEH] and received a Right to Sue letter, which was served on Defendant on February 12, 2007. A true and correct copy of that document is attached as "Exhibit 2" and is incorporated by reference as though fully pleaded herein. Plaintiff retained the services of Rand L. Stephens to represent this action and therefore, pursuant to Government Code Section 12926 (b), and other state laws, requests an award of reasonable attorney fees against Defendants, and each of them, according to proof.

## CLAIM FOR PUNITIVE DAMAGES

### Against all Defendants

103.    Plaintiff incorporates by reference Paragraphs 1 through 98, inclusive, as though set forth here in full and as a claim for Punitive damages against all Defendants further alleges:

104.    Defendants' conduct was despicable in the following ways: the defendant discriminated against Plaintiff in violation of statutory protections under the FEHA and several federal statutes that prohibited discrimination based on Plaintiff's age and did so maliciously with a conscious disregard for Plaintiff's, civil rights, property, life and safety. Defendant used its position as Plaintiff's employer to oppress him with the threat of the loss of his job, with full knowledge that Plaintiff was of such an age that it would be difficult to find other work and would be unable to support his family. Defendants' conduct was malicious as it was carried out to cause actual financial and physical injury to Plaintiff. Defendant's conduct was fraudulent as it concocted false job performance issues as a pretext to fire him.

## PRAYER

WHEREFORE, Plaintiff seeks judgment against Defendants, and each of them, for:

1.    General damages in a sum according to proof;

2.    Plaintiff's actual compensatory, consequential and incidental losses, including but not limited to loss of income both "back pay" and prospective "front pay" and benefits, according to proof, together with prejudgment interest pursuant to Civil Code Section 3287 and/or 3288;

3.    A money judgment for mental pain and anguish and emotional distress, and other general damages according to proof;

4.    Reinstatement of Plaintiff to his former job and position at the final rate of pay;

5.    Special damages for medical injuries, medical care and related medical expenses;

6.   Attorney fees according to proof;

7.   Punitive damages in the sum according to proof;

8.   Costs of suit; and

9.   For such other and further relief as the court deems proper.

Dated: June 22, 2007


RAND L. STEPHENS, Attorney for
Plaintiff, C. ROBERT PETTIT, M.D.


**JURY TRIAL DEMANDED**

Notwithstanding the fact Plaintiff has pleaded, in part, for equitable relief from the Court, Plaintiff demands trial of all legal issues by Jury.


Dated: June 22, 2007


RAND L. STEPHENS, Attorney for
Plaintiff, C. ROBERT PETTIT, M.D.

1
2
3
4
5
6
7
8
9
10
11
12

# EXHIBIT 1

13
14
15
16
17
18
19
20
21
22
23
24
25

1

2  # EXHIBIT 2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25