1  SILVANO B. MARCHESI (SBN 42965)
   County Counsel
2  JANET L. HOLMES (SBN 107639)
   Deputy County Counsel
3  COUNTY OF CONTRA COSTA
   651 Pine Street, 9th Floor
4  Martinez, California 94553
   Telephone:  (925) 335-1800
5  Facsimile:  (925) 335-1866
   email: jholm@cc.cccounty.us
6
   Attorneys for Defendant
7  CONTRA COSTA COUNTY

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12

13  C. ROBERT PETTIT, M.D.,                  No.  C 07 3358 JSW

14              Plaintiff,                    DEFENDANT'S NOTICE OF MOTION,
                                             MOTION AND MEMORANDUM OF
15  v.                                        POINTS AND AUTHORITIES IN SUPPORT
                                             OF MOTION FOR SUMMARY JUDGMENT
16  CONTRA COSTA MEDICAL SERVICES            OR PARTIAL SUMMARY JUDGMENT
    REGIONAL MEDICAL CENTER and
17  DOES ONE THROUGH TWENTY,
    Inclusive,                               Date: August 22, 2008
18                                            Time: 9:00 a.m.
              Defendants.                     The Honorable Jeffrey White presiding
19

20

21

22

23

24

25

26

27

28

---

DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT
C 07 3358 JSW

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. FACTS PERTAINING TO DR. PETTIT AND HIS CONTRACT THE COUNTY
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. STANDARD ON SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . 6

    B. BECAUSE PLAINTIFF IS UNABLE TO PROVE THE COUNTY ENGAGED IN
       AGE DISCRIMINATION, PLAINTIFF'S AGE DISCRIMINATION CLAIM
       MUST FAIL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C. SINCE THE LONE FEDERAL LAW CAUSE OF ACTION (FOR AGE
       DISCRIMINATION) FAILS, THE COURT SHOULD DECLINE TO
       EXERCISE SUPPLEMENTAL JURISDICTION ON THE SIX STATE LAW
       CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D. PLAINTIFF'S STATE LAW CAUSES OF ACTION FAIL AS A MATTER OF
       LAW AND MUST BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1. AS A CONTRACTOR, PLAINTIFF CANNOT PREVAIL ON HIS CLAIM
           FOR VIOLATION OF WHISTLEBLOWER PROTECTION . . . . . . . 11

        2. PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT AND BREACH OF
           IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE
           WITHOUT MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3. PLAINTIFF CANNOT ESTABLISH HIS FOURTH CAUSE OF ACTION
           FOR VIOLATION OF PUBLIC POLICY . . . . . . . . . . . . . . . . . . . . . . 13

        4. PLAINTIFF WRONGFUL TERMINATION CLAIM FAILS
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI. CONCLUSION
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

---

DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT
C 07 3358 JSW

1

## TABLE OF AUTHORITIES

2

**CASES**

3

4

*Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826 (2001) . . . . . . . . . . . . . . . . . . . . . . . 15, 16

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bear Creek Master Association v. Edwards*, 130 Cal. App. 4th 1470 (2005) . . . . . . . . . . . 12

6

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) . . . . . . . . . . . . . . . . . . . . . 5, 10

7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8

*Damon v. Flaming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999) . . . . . . . . 9

9

*Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 8

10

*Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802 (9th Cir. 2004) . . . . . . . . . . . 5, 8

11

*Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467 (1992) . . . . . . . . . . . . . . . . . . 15

12

*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 8

13

*Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

14

*Haggis v. City of Los Angeles*, 22 Cal. 4th 490 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15

*Hersant v. California Dept. of Social Services*, 57 Cal. App. 4th 997 (1997) . . . . . . . . . . . . 7

16

*Hill v. City of Long Beach*, 33 Cal. App. 4th 1684 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 12

17

*Jacobson v. Schwarzenegger*, 357 F. Supp 2d 1198 (C.D. Cal. 2004) . . . . . . . . . . . . . 5, 11, 16

18

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19

*Kelly v. Stamps.com Inc.*, 135 Cal.App.4th 1088 (2005 . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20

*King v. Idaho Funeral Serv. Ass'n.*, 862 F.2d 744 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . 6

21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 476 U.S. 574 (1986) . . . . . . . . . . . . . . . 6

22

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . 7, 8, 15, 16

23

*Miller v. State of California*, 18 Cal. 3d 808 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

24

*Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004) . . . . . . . . . . . . . . . . . . . . . . 13

25

*Nunn v. State of California*, 35 Cal. 3d 616 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26

*Phay Him v. City and County of San Francisco*, 133 Cal. App.4th 437 (2005) . . . . . . . . . . 12

27

28

*Ross v. San Francisco Bay Area Rapid Transit District*, 146 Cal. App. 4th 1507 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 13-15

*Searcy v. Hemet Unified School Dist.*, 177 Cal. App. 3d 792 (1986) . . . . . . . . . . . . . . . . . . 13

*Shoemaker v. Myers*, 52 Cal. 3d 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smolen v. Deloitte, Haskings & Sells*, 921 F.2d 959 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 6

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . 7

*Stegall v. Citadel Broadcasting Co.*, 350 F. 3d 1061 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . 15

*Stevenson v. Superior Court*, 16 Cal. 4th 880 (1997) . . . . . . . . . . . . . . . . . . . . . 14

*Sup v. Bechtel National Inc.*, 24 Cal. 4th 317 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Susman v. City of Los Angeles*, 269 Cal. App. 2d 803 (1969) . . . . . . . . . . . . . . . . . . . . . . . 13

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626 (9th Cir. 1987) . . . . . . 6

*Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . 7, 8

*Thornhill Pub. Co. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . 6

*Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111 (1985) . . . . . . . . . . . . . . . . . . . . . . . 8

*Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 7

*Zelig v. County of Los Angeles*, 27 Cal. 4th 1112 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**STATUTES AND RULES**

2 California Civil Regulations Section 7287.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 United States Code Section 1367(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

29 United States Code Section 623(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Civil Code Section 3287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

California Government Code Section 12940(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

California Government Code Section 815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

California Government Code Section 820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

California Government Code Section 825.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1   California Government Code Section 12900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
2   California Labor Code Section 1102.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 16
3   Federal  Rule of Civil Procedure, Rule 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
4   Government Code Section 821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

2       Defendant Contra Costa County (sued erroneously as "Contra Costa Medical Services

3   Regional Medical Center") hereby gives notice of its motion for summary judgment or partial

4   summary judgment, scheduled for hearing on August 22, 2008 at 9:00 a.m. in Courtroom 2 of

5   the above-referenced court, the Honorable Jeffrey White, presiding.

6       Defendant moves for summary judgment on all six causes of action, or in the alternative

7   for partial summary judgment on the lone federal law cause of action (age discrimination) and

8   for an order declining the exercise of supplemental jurisdiction on the six state law causes of

9   action.  In further alternative, Defendant seeks partial summary judgment on each and all

10  causes of action as to which there is no triable issue of material fact.

11                              I. INTRODUCTION

12      C. Robert Pettit, M.D., Inc. entered into a contract with Defendant Contra Costa County

13  to provide medical services pertaining to ear, nose and throat (Otolaryngology).  Dr. Pettit was

14  to perform medical services for patients of Contra Costa County, and pursuant to the terms of

15  his contract was paid $312.50 per hour for these services.  The contract had a three-year term,

16  but could be terminated by either party on 60-days written notice to the other party.  Contra

17  Costa County ("the County") terminated the contract short of its expiration date, upon written

18  notice under the terms of the contract.  Dr. Pettit now contends the contract was wrongfully

19  terminated as a result of his "whistleblowing" activities, in violation of public policy, and as a

20  result of age discrimination.

21      Dr. Pettit alleges six causes of action: (1) wrongful termination (Cal. Gov't. Code

22  §12940, et seq., Cal. Civ. Code §3287); (2) breach of contract; (3) violation of whistle-blower

23  statute (Cal. Labor Code §1102.5); (4) violation of public policy (pretext in hiring) (Cal. Labor

24  Code §1102.5); (5) breach of the covenant of good faith and fair dealing; and (6) age

25  discrimination (asserted under both federal and California law).  The age discrimination cause

26  of action is the only cause of action asserted under federal law; all other causes of action are

27  brought solely under California law.

28

1    Defendant submits in this motion for summary judgment that the undisputed facts

2  demonstrate that plaintiff cannot prevail on his lone federal or six state law claims.

3                                    II. FACTS[1]

4  A. PROCEDURAL BACKGROUND

5    The jurisdictional basis for plaintiff's complaint is a FEHA "Complaint of

6  Discrimination" filed on or about January 12, 2007. Therein Dr. Pettit claimed that on

7  November 29, 2006, he was fired, harassed and threatened with termination because he

8  reported dangerous/substandard care. Dr. Pettit alleged he complained to a superior (Dr.

9  Martha Corcoran) about substandard patient care . (Declaration of Janet L. Holmes, Ex.4)

10  B. FACTS PERTAINING TO DR. PETTIT AND HIS CONTRACT THE COUNTY

11    After serving for some time as a *locums tenens* physician, through a temporary agency

12  providing physicians for short-term assignments, Robert Pettit negotiated, and was awarded, a

13  contract to provide otolaryngology ("ENT") physician services FOR Contra Costa County.

14  The effective date of the contract was February 1, 2005, and its expiration date was January

15  31, 2008 "unless sooner terminated as provided" in the contract. The contract provided for

16  termination "by either party, in its sole discretion on sixty-day advance written notice thereof

17  to the other..." (Declaration of Dr. Jeffrey V. Smith ("Smith Dec."), Ex. 1, Page L-4.) Dr.

18  Pettit was to be paid at the hourly rate of $312.50. (Smith Dec., ¶6; Ex. 1, p. 1.) The contract

19  was approved by the County's Board of Supervisors on their consent calendar on January 25,

20  2005. (*Id.*, ¶6.)

21    Dr. Jeff Smith, Chief Executive Officer for the County's hospital and clinics, alone

22  made the decision to recommend that Board of Supervisors terminate Dr. Pettit's contract short

23  of its natural expiration. Pursuant to the terms of the contract, on January 3, 2007, Dr. Smith

24  signed and processed for mailing to Dr. Pettit a letter of termination of the contract with the

25  effective date of March 3, 2007. (Smith Dec., ¶11; Ex. 2.) On January 3, 2007, in the regular

26

27    [1] The factual statement is limited to material facts that are not reasonably expected to be in

28  dispute. Disputed and immaterial facts are not recited.

DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT
C 07 3358 JSW                                                                    2

1  course of County business, that termination letter was placed in the U.S. Mail, for delivery

2  with certified receipt requested. (Declaration of Marie Humphrey, ¶¶2-3, Ex. 3.)

3       On January 25, 2006 , the termination letter that had been sent by certified mail was

4  returned to the County as "unclaimed." (Humphrey Dec. Ex.3.)  The termination letter that

5  was returned as unclaimed was mailed again by regular mail on January 26, 2007 and Dr. Pettit

6  acknowledges having received it shortly thereafter.  *Id.*  The effective termination date for the

7  termination of the contract was actually March 23, 2007.  (Smith Dec., ¶ 11, Ex. 2-A.)

8       Dr. Smith has been, at all pertinent times, the chief executive officer for the County's

9  hospitals and clinics.  Among other responsibilities, Dr. Smith is responsible for entering into

10  and terminating contracts with physicians.  The County's Health Services Department has in

11  its workforce of contract physicians approximately 50 doctors over the age of 40, including a

12  significant portion over the age of 60.  The County and Dr. Smith actively recruit and retain

13  physicians who have retired from full-time employment and still wish to work as physicians.

14  Dr. Smith especially likes to retain services of these older doctors because he finds their years

15  of experience provide both expertise and good judgment in diagnosis and treatment  While

16  younger/newer doctors are quick to want to perform new and exciting (to them) procedures,

17  the older doctors have wisdom that comes from years of experience and do not, generally, feel

18  pressured to perform the latest, most intricate procedures.  The older doctors can be

19  particularly skilled at responding to needs of the County's large patient base of underserved

20  Californians. (Smith Dec., ¶¶ 3,4.)

21       Dr. Smith's decision to terminate the contract with Dr. Pettit was based on a number of

22  factors.  First, Dr. Smith learned about six months into the contract that Dr. Pettit appeared to

23  be hesitant in the operating room, and was somewhat unsure about certain procedures.  He was

24  reluctant to get involved with cancer cases or complex cases.  Next, there were a number of

25  concerns expressed to Dr. Smith by Emergency Room personnel about Dr. Pettit's

26  responsiveness to the Emergency Room.  Anesthesiologists were concerned about Dr. Pettit's

27  ability to manage airways during surgical procedures.  In addition, Dr. Pettit routinely referred

28

DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT
C 07 3358 JSW                                                    3

1    to tertiary care centers patients who would not typically be sent to outside providers but instead

2    should have been cared for by Dr. Pettit.   Dr. Pettit also referred patients to his County ENT

3    colleagues for "second" opinions.   Because the entire ENT unit was staffed with only three

4    physicians, having one who was not carrying his load had a significant impact in the unit.   Dr.

5    Smith became concerned that Dr. Pettit might not be a good fit for the County hospital and its

6    patients' needs.   Still, even in early 2006 Dr. Smith was hopeful Dr. Pettit could assimilate into

7    the organization.   (Smith Dec., ¶7.)

8         During 2006, however, the complaints about Dr. Pettit increased and Dr. Smith's

9    concerns about Dr. Pettit's ability to function well with the County grew.   Dr. Pettit seemed to

10    want to pick and choose his patients and focus on only basic ENT care.   In the County system,

11    the physicians must take all comers.   Dr. Smith received feedback from the nursing staff in the

12    clinics and the operating rooms, the anesthesiologists in the operating room, and administrative

13    staff in the clinics, all expressing concerns about Dr. Pettit.   Pediatricians were hesitant to send

14    children to Dr. Pettit.   Nurses expressed concerns about the time it took for Dr. Pettit to

15    complete routine procedures.   Also in 2006, there were complaints that Dr. Pettit was seeing

16    repeatedly, over periods of many months, patients who did not need to been seen in the ENT

17    clinic at all (a practice called "churning"), and was referring more difficult cases to other

18    doctors for second opinions or treatment (a practice called "dumping").   (Smith Dec., ¶¶7,8.)

19         Dr. Smith decided to terminate Dr. Pettit's contract but delayed effecting the

20    termination until a time when the other ENT physicians in the unit had stabilized the unit and

21    could cover in Dr. Pettit's absence.   In late November or early December 2006, Dr. Smith

22    submitted the paperwork for effecting termination of Dr. Pettit's contract.   (Smith Dec., ¶¶8,9.)

23         At no time before Dr. Smith submitted the paperwork for termination of Dr. Pettit's

24    contract did Dr. Smith have any knowledge that Dr. Pettit had engaged in any "protected" or

25    "whistleblower" activities.   There is no evidence that any member of the Board of Supervisors,

26    which approved termination of Dr. Pettit's contract, had any information whatsoever about

27    "protected" or "whistleblower" activities on the part of Dr. Pettit or any complaints by him of

28

1 | substandard care or on-call-response. (Smith Dec., ¶10.)

2 |     At all time pertinent herein, the County and the Health Services Department have had in

3 | place policies for preventing, as well as reporting, discrimination on any protected basis,

4 | including age discrimination. Employees and managers are regularly trained on these policies

5 | and on recognizing and preventing discrimination and harassment. In addition, the Health

6 | Services Department provides special training in recognizing and preventing discrimination

7 | for our management employees. (Smith Dec., ¶12.)

8

9 | IV. SUMMARY OF ARGUMENT

10 |     The County submits plaintiff's lone federal law cause of action, for age discrimination,

11 | fails because Dr. Pettit cannot establish his prima facie case and cannot rebut the County's

12 | legitimate, non discriminatory reasons for the decision to terminate the contract, pursuant to

13 | the terms of the contract. *Enlow v. Salem-Keizer Yellow Cab Co., Inc.,* 389 F.3d 802, 812 (9th

14 | Cir. 2004), *cert. denied,* 544 U.S. 974 (2005). Since the lone federal law cause of action must

15 | be dismissed, the court should decline to exercise supplemental jurisdiction of the remaining

16 | six state law causes of action. *See* 28 U.S.C. §1367(c)(3); *Carnegie-Mellon University v.*

17 | *Cohill,* 484 U.S. 343, 350 n.7 (1988). Even if the court exercises supplemental jurisdiction

18 | over the six state causes of action, they must be dismissed because (1) plaintiff was not an

19 | employee for purposes of asserting claims under California Labor Code section 1102.5

20 | (*Jacobson v. Schwarzenegger,* 357 F. Supp 2d 1198, 1212 (C.D. Cal. 2004), (2) plaintiff's

21 | breach of contract claims fail because he cannot prove essential elements of his case, (3)

22 | common law "*Tameny*" claims that are redundant of statutory claims are barred against public

23 | entities (*Ross v. San Francisco Bay Area Rapid Transit District,* 146 Cal. App. 4th 1507, 1514

24 | (2007), and (4) the FEHA discrimination claim fails because plaintiff cannot meet his prima

25 | facie burden and also cannot rebut the County's legitimate, non discriminatory reasons for the

26 | decision to terminate the contract.

27

28

# V.  ARGUMENTS AND AUTHORITIES

## A.  STANDARD ON SUMMARY JUDGMENT.

A motion for summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. Rule 56. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323  (1986). If the moving party meets this burden, the nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. Rule 56(e); *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). The party opposing summary judgment must present some evidence establishing each element of their claims on which they would bear the burden of proof at trial. *See Smolen v. Deloitte, Haskings & Sells*, 921 F.2d 959, 963 (9th Cir. 1990), citing *Celotex*, 477 U.S. at 322.

"[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory, speculative allegations in affidavits and moving papers are insufficient to raise genuine issues of fact and defeat summary judgment. *See King v. Idaho Funeral Serv. Ass'n.*, 862 F.2d 744, 746 (9th Cir. 1988); *Thornhill Pub. Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; "[t]here must be evidence on which the jury could reasonably find for [the non-moving party]." *Anderson*, at p. 248. In evaluating the evidence, the court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv.*, 809 F.2d at 630-31, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 476 U.S. 574 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). However, an inference may be drawn in favor of the non-moving party only if the inference is "rational" or "reasonable" under the governing  substantive law. *See Matsushita*, 475 U.S. at

588. Moreover, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) [internal quotations omitted]. Rather, a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. *See Id.*

## B. BECAUSE PLAINTIFF IS UNABLE TO PROVE THE COUNTY ENGAGED IN AGE DISCRIMINATION, PLAINTIFF'S AGE DISCRIMINATION CLAIM MUST FAIL

Plaintiff's lone cause of action asserted under federal law is his age discrimination claim. Under the Age Discrimination in Employment Act, it is "unlawful for an employer … to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff also alleges an age discrimination claim under the California Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code §12900, *et seq.* The objectives of the FEHA and the ADEA are identical, and therefore, California courts look to federal case law in the interpretation of analogous provisions of the FEHA. *See Hersant v. California Dept. of Social Services,* 57 Cal. App. 4th 997, 1002, fn. 1 (1997).

In opposing summary judgment, plaintiff bears an initial burden to establish a *prima facie* case of age discrimination. Often, the prima facie case is shown by the "shifting burdens" test articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). A plaintiff has the initial burden to prove by a preponderance of evidence a *prima facie* case of disparate treatment, that is, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981) ["*Burdine*"]; *see St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, (1993). The burden may be satisfied either with "direct evidence" of discriminatory intent or through the framework of *McDonnell Douglas* test. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). "Direct evidence is evidence which, if believed, proves the fact [of

1  discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.,* 150

2  F.3d 1217, 1221 (9th Cir. 1988), quoting *Davis v. Chevron, U.S.A., Inc.,* 14 F.3d 1082, 1085

3  (5th Cir. 1994).

4      To establish a *prima facie* case of disparate treatment under *McDonnell Douglas* (in the

5  absence of direct evidence), plaintiff must show he: (1) was a member of a protected class; (2)

6  was performing his job satisfactorily; (3) suffered an adverse employment action; and

7  (4) the action occurred under circumstances suggesting a discriminatory motive, that is,

8  persons outside the protected class with equal or lesser qualifications were given more

9  favorable treatment. *See McDonnell Douglas,* 411 U.S. at 792, 802. If plaintiff establishes a

10  *prima facie* case, the burden shifts to the employer "to articulate some legitimate,

11  nondiscriminatory reason" for adverse employment action. *McDonnell Douglas Corp.,* 411

12  U.S. at 802. If the employer carries its burden, plaintiff must have an opportunity to prove by

13  a preponderance of evidence that the legitimate reasons offered by the employer were not its

14  true reasons but were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804;

15  *Burdine,* 450 U.S. at 253. California also follows the *McDonnell Douglas* test when direct

16  evidence of intentional discrimination is not present. *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317,

17  354 (2000).

18      The *McDonnell Douglas* test is not used, however, where direct evidence of

19  discrimination exists. In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111 (1985), the

20  Supreme Court instructed that "the *McDonnell Douglas* test is inapplicable where the plaintiff

21  presents  direct evidence of discrimination." Direct evidence, in the context of an ADEA

22  claim, is defined as: "evidence of conduct or statements by persons involved in the decision-

23  making process that may be viewed as directly reflecting the alleged discriminatory attitude . .

24  . . sufficient to permit the fact finder to infer that that attitude was more likely than not a

25  motivating factor in the employer's decision." *Enlow v. Salem-Keizer Yellow Cab Co., Inc.,*

26  389 F.3d 802, 812 (9th Cir. 2004) [firing 70-year-old employee-driver because he was too old

27  for coverage under employer's new liability insurance policy was direct evidence of age

28

1  discrimination], *cert. denied,* 544 U.S. 974 (2005).  To establish "direct evidence" of age

2  discrimination, plaintiff must demonstrate the decision-maker places substantial negative

3  reliance on plaintiff's age in reaching a decision to fire him.  *Damon v. Flaming Supermarkets*

4  *of Florida, Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) .

5        Here, plaintiff can demonstrate no "direct evidence" of age discrimination.  Instead,

6  plaintiff simply asserts his age (65) was the true reason for the termination of his contract.

7  Plaintiff's first hurdle is his inability to meet his prima facie case.  Plaintiff is unable to

8  demonstrate that he was treated differently than other, younger doctors.  The County retains

9  over 60 specialists on a contract basis each year.  The County recruits and retains many doctors

10  over age 60.  As set forth in the Declaration of Dr. Jeff Smith, a significant portion of the

11  specialists on contract, like Dr. Pettit, are over age 60.  Moreover, Dr. Smith believes older and

12  more experienced doctors have a better understanding of the benefits and risks of intervention.

13  Younger doctors are anxious to do procedures and surgeries while older doctors are more

14  comfortable taking a wait-and-see approach in non-critical situations, which Dr. Smith opines

15  is a significant benefit of older, more experienced doctors.  (Smith Dec., ¶4.)

16        Even if Dr. Pettit were to create a triable issue of fact on an element of the prima facie

17  case, he is unable to rebut defendant's legitimate, non-discriminatory reasons for the

18  termination of the contract.  As set forth in the declarations filed herewith, Dr. Smith

19  determined about six months into the contract that Dr. Pettit might not be well-suited for the

20  County's public health practice.  Dr. Smith received information on numerous complaints

21  concerning Dr. Pettit.  The complaints, which increased in number over time, included:  Dr.

22  Pettit appeared to be unsure of himself in the operating room; anesthesiologists were

23  concerned about Dr. Pettit's ability to manage airways in the operating room; Dr. Pettit was

24  reluctant to get involved in cancer cases, or other complex cases; Emergency Room personnel

25  expressed concerns about Dr. Pettit's responsiveness to calls from the ER; there were

26  difficulties with Dr. Pettit referring out to tertiary care centers patients who could normally be

27  handled better within the County's system and patients who had limited access to

28

DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT
C 07 3358 JSW                                   9

1 transportation were being asked by Dr. Pettit to report to U.C. San Francisco for evaluation; it

2 appeared Dr. Pettit preferred to refer patients to U.C.S.F. rather than treat them himself; Dr.

3 Pettit had patients scheduled to return to see him time and time again when they really did not

4 need to be seen in the ENT clinic and therefore Dr. Pettit's clinic schedule was filled, in part,

5 with patients who did not require any treatment, a practice called "churning;"  Dr. Pettit was

6 unwilling to take on some of the more complex ENT cases, and instead would "dump" these

7 patients on other doctors, or refer them to outside specialists; and pediatric physicians were

8 hesitant to refer children to Dr. Pettit for treatment.  All of these concerns prompted Dr. Smith,

9 over time, to conclude that Dr. Pettit was not a good fit for the County medical system needs,

10 and he made the decision to terminate the contract short of its natural expiration.  Dr. Smith

11 caused to be mailed in the regular course of business a sixty-day notice of termination, in

12 compliance with the  terms of the contract, on January 3, 2007.  (Smith Dec., ¶¶7,8,11.)

13    Because Dr. Pettit is unable to rebut the legitimate non-discriminatory reasons for the

14 decision to terminate the contract, Dr. Pettit's age discrimination cause of action fails and must

15 be dismissed.

16 C.  SINCE THE LONE FEDERAL LAW CAUSE OF ACTION (FOR AGE

17 DISCRIMINATION) FAILS, THE COURT SHOULD DECLINE TO EXERCISE

18 SUPPLEMENTAL JURISDICTION ON THE SIX STATE LAW CAUSES OF ACTION.

19    Plaintiff's complaint asserts six separate causes of action under state (California) law,

20 and only one cause of action under federal law.  Since the lone federal law cause of action (age

21 discrimination under ADEA) fails as a matter of law, Defendant submits the Court should

22 decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28

23 U.S.C. §1367(c)(3); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

24 "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of

25 factors to be considered under the pendent jurisdiction doctrine -- judicial economy,

26 convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over

27 the remaining state-law claims." *Id*.  The nuances of the numerous state law claims, some in

28

evolving areas of law, may be better addressed under the auspices of the state trial and appellate courts. *See, e.g., Ross v. San Francisco Bay Area Rapid Transit District*, 146 Cal. App. 4th 1507, 1514 (2007).

D.  PLAINTIFF'S STATE LAW CAUSES OF ACTION FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

1.  AS A CONTRACTOR, PLAINTIFF CANNOT PREVAIL ON HIS CLAIM FOR VIOLATION OF WHISTLEBLOWER PROTECTION.

An essential element of a claim under California Labor Code section 1102.5 for "whistleblower" protection (plaintiff's third cause of action) is that the plaintiff prove he is an employee of the defendant. *Jacobson v. Schwarzenegger*, 357 F. Supp 2d 1198, 1212 (C.D. Cal. 2004).  It is undisputed that Dr. Pettit was providing services pursuant to a "standard contract" that he signed and attached to his complaint in this action; indeed, he asserts violations of the terms of that contract.  Therefore, it is well-established that Dr. Pettit is precluded from asserting a claim arising out of Labor Code section 1102.5. *Id.*  Plaintiff's third cause of action is barred as a matter of law and must be dismissed.

2.  PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE WITHOUT MERIT.

Plaintiff's second and fifth causes of action assert claims under California contract law. California Government Code section 31000 authorizes the board of supervisors to contract on behalf of the County for the provision of special services.  The contract entered into by the County and Dr. Pettit pursuant to Government Code section 31000 was terminated by the County on 60-day written notice, per the terms of the contract.

Pursuant to Special Condition 2.a. (Smith Dec., Ex. 1, page L-4), the County provided 60 days written notice to Dr. Pettit. (Smith Dec., Ex. 2.)  The written notice was sent by to Dr. Pettit, correctly addressed and properly mailed, by U.S. Mail, "return receipt requested" on January 3, 2007.  The termination date was March 3, 2007.  California Evidence Code section 641 provides: "A letter correctly addressed and properly mailed is presumed to have been

1  received in the ordinary course of mail." Deposit in the U.S. Mail is deemed compliant with

2  statutes requiring service by mail. *Phay Him v. City and County of San Francisco*, 133 Cal.

3  App.4th 437, 443-44 (2005).   This conclusion is also compelled by the fact that on January 8,

4  2007, for the first time since their November 29, 2006 meeting, Dr. Pettit contacted Dr.

5  Berguer by phone about the status of the planned termination of his contract, which suggests

6  Dr. Pettit already knew of the termination notice. On January 8, 2007 Dr. Berguer confirmed

7  both in their phone conversation and by letter to Dr. Pettit that the County had indeed decided

8  to terminate the contract. (Berguer Dec., ¶4.)

9        On January 25, 2007, the January 3, 2007 post-marked envelope and written notice

10  were returned by the U. S Postal Service as "unclaimed." (Humphrey Dec., Ex. 3.)  The next

11  day, the County re-sent the written notice to the same address, by regular U.S. Mail, which was

12  not returned.  California law provides the mailing/notice requirement cannot be defeated by a

13  willful failure to accept certified mail. *Bear Creek Master Association v. Edwards,* 130 Cal.

14  App. 4th 1470, 1484 (2005).  Therefore, plaintiff cannot prevail on breach of contract based on

15  too-short notice under the terms of the contract.

16        Assuming *arguendo* that plaintiff was a County employee, as he asserts elsewhere in his

17  complaint, his breach claims are barred. The terms of public employment are set by statute, not

18  by contract.  *Miller v. State of California,* 18 Cal. 3d 808, 813 (1977) , *accord Shoemaker v.*

19  *Myers,* 52 Cal. 3d 1, 23-24 (1990).  A California public employee, whether civil service or not,

20  cannot state a cause of action for breach of contract or breach of the implied covenant of good

21  faith and fair dealing arising out of the public employment relationship. *Shoemaker v. Myers,*

22  *supra,* at 23–24; *Hill v. City of Long Beach*, 33 Cal. App. 4th 1684, 1690 (1995) .  A public

23  employee's remedies are limited to those provided by statute or ordinance. *Hill, supra,* at

24  1690.

25        For these reasons, the claims asserted in the second and fifth causes of action are barred

26  as a matter of law and must be dismissed.

27

28

1  3.  PLAINTIFF CANNOT ESTABLISH HIS FOURTH CAUSE OF ACTION FOR

2  VIOLATION OF PUBLIC POLICY.

3        Plaintiff's fourth cause of action attempts to assert a common law cause of action

4  known as a *Tameny* claim.  In *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980), the

5  California Supreme Court recognized that there may be common law tort actions against

6  employers for conduct in violation of important public policies.  However, as set forth more

7  fully below, *Tameny* claims are barred against public entities in factual scenarios such as the

8  one at bar.  *Ross v. San Francisco Bay Area Rapid Transit District*, 146 Cal. App. 4th 1507,

9  1514 (2007).  Moreover, *Tameny* claims are defined to "exclude claims that are entirely

10  redundant to those authorized by statute."  *Id.*

11        In California, a public entity can be liable in tort as *only* provided by statute.  *Zelig v.*

12  *County of Los Angeles*, 27 Cal. 4th 1112, 1127 (2002); Cal. Gov. Code, § 815, subd. (a).

13  "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether

14  such injury arises out of an act or omission of the public entity or a public employee or any

15  other person."  Cal. Gov. Code, § 815, subd. (a).  No statute imposes a general duty of care on

16  a public entity.  *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1111-1112 (2004).

17  A public entity's statutory duty can only be imposed by an enactment, which is "a

18  constitutional provision, statute, charter provision, ordinance or regulation."  Cal. Gov. Code,

19  §§ 815.6, 810.6.  Whether an enactment is designed to impose a mandatory duty is a question

20  of law for the court.  *Nunn v. State of California*, 35 Cal. 3d 616, 624 (1984).  The court must

21  decide whether a particular statute is intended to impose a mandatory duty, rather than a mere

22  obligation to perform a discretionary function.  *Haggis v. City of Los Angeles*, 22 Cal. 4th 490,

23  499 (2000).  To state a cause of action, every fact essential to the existence of statutory liability

24  must be pleaded with particularity, including the identity of the statute alleged to establish a

25  duty.  *Susman v. City of Los Angeles*, 269 Cal. App. 2d 803, 809 (1969); *Searcy v. Hemet*

26  *Unified School Dist.*, 177 Cal. App. 3d 792, 802 (1986).

27        Aside from the FEHA age discrimination cause of action, plaintiff has not identified

28

1    any enactments establishing a mandatory duty on the part of the County.  Moreover, while the

2    California Supreme Court has found that FEHA can support a common law cause of action for

3    wrongful termination in violation of public policy (*Stevenson v. Superior Court*, 16 Cal. 4th

4    880, 909 (1997)), the FEHA statute does not meet the mandatory duty requirement for the

5    common law cause of action.  *Ross, supra,* 146 Cal. App. 4th at 1514.  Therefore, for common

6    law causes of action such as this one, the County's liability "can *only* be predicated on its

7    vicarious liability, if any, for the wrongful acts of its employees", and if the employees are

8    immune, the County is immune.  *Id.*; Gov. Code, § 815.2, subd. (b).

9        The factual scenario at bar falls squarely within *Ross* and the immunity of Government

10   Code section 821.6.  *Ross, supra,* at 1516.  Government Code section 821.6 provides that "[a]

11   public employee is not liable for injury caused by his instituting . . . any . . . administrative

12   proceeding within the scope of his employment, even if he acts maliciously and without

13   probable cause."  As set forth in his declaration, Dr. Smith was responsible for entering into

14   and terminating contracts with physicians.  Dr. Smith made the decision to terminate Dr.

15   Pettit's contract short of its natural expiration, but under the terms of the contract, based on a

16   variety of legitimate concerns, as set forth in his declaration.  (Smith Dec., ¶¶7-9.)  Dr. Smith's

17   decision to end the contract of a temporary doctor was within the scope of his employment,

18   and is protected by the immunity afforded in Government Code section 821.6.  The fact that

19   there was no administrative proceeding (as there could have been in the case of a public

20   employee) because plaintiff was a contract doctor does not preclude  application of the

21   immunity.  If a public entity would be immune for terminating an employee under these same

22   circumstances, public policy would *not* support disabling the immunity in a case involving

23   ending the assignment of a temporary contract doctor.  *See Ross, supra,* 146 Cal. App. 4th at

24   1513-1517; Gov. Code, §§ 815, 815.2, subd. (b), 821.6.  Plaintiff's fourth cause of action is

25   therefore barred and must be dismissed.

26        4. PLAINTIFF WRONGFUL TERMINATION CLAIM FAILS

27        In his first cause of action, Dr. Pettit appears to assert a claim for common law "tortious

28

1  wrongful termination," citing California Government Code section 12940.  Complaint, pp. 4-9,

2  ¶33 (p.8).  The first cause of action appears duplicative of the state law claim under the sixth

3  cause of action ("age discrimination"), except that the first adds allegations of whistle-blower

4  protection (Cal. Lab. Code §1102.5) asserted in the third cause of action and discussed above

5  in Section V.D.1.

6      Because the first cause of action appears to be duplicative of the state law statutory

7  claims asserted in the third and sixth causes of action, it is barred by the principles enunciated

8  in *Ross*.  *Ross, supra*, 146 Cal. App. 4th at 1514; Cal. Gov. Code, §§ 815.2, subd. (b), 821.6.

9      Even if *Ross* were not to apply, Dr. Pettit's wrongful termination claim under the first

10  cause of action fails because he cannot meet his prima facie case and cannot rebut the

11  County's legitimate non-discriminatory reasons for terminating the contract.

12     Under the FEHA, an employer may not retaliate against any person for opposing any

13  practices forbidden by the FEHA, or filing a complaint, testifying, or assisting in any

14  proceeding under the FEHA.  Cal. Gov. Code § 12940(h); 2 Cal.C.Regs. § 7287.8.  As

15  discussed above, the *McDonnell Douglas* burden-shifting framework applies in discrimination

16  cases under both federal and state law:  (1) plaintiff must prove a *prima facie* case; (2) the

17  employer must then articulate a legitimate, nonretaliatory reason for the action taken; and (3)

18  plaintiff must then prove the employer's reason is a pretext.  *Stegall v. Citadel Broadcasting

19  Co.*, 350 F. 3d 1061, 1065 (9th Cir. 2003); *Flait v. North American Watch Corp.*, 3 Cal. App.

20  4th 467, 475-476 (1992) [California follows federal rules on burden of proof and production of

21  evidence].  Under the *McDonnell Douglas* test, the plaintiff-employee must first set forth

22  sufficient evidence to establish a prima facie case of discrimination.  *Sup v. Bechtel National

23  Inc.*, 24 Cal. 4th 317, 354-356 (2000).  To establish a prima facie case of age discrimination,

24  the plaintiff must show that the plaintiff is a member in the protected class, that the plaintiff

25  was performing competently, that the plaintiff suffered an adverse employment action, and that

26  there is some other circumstance suggesting a discriminatory motive.  *Id.* at p. 355.

27     In *Kelly v. Stamps.com Inc.*, 135 Cal.App.4th 1088 (2005), the court explained the *Guz*

28

1   standard in light of the California Supreme Court's decision in *Aguilar v. Atlantic Richfield*

2   *Co.,* 25 Cal.4th 826 (2001) : "A defendant employer's motion for summary judgment slightly

3   modifies the order of these [*McDonnell Douglas*] showings.  If the motion for summary

4   judgment relies in whole or in part on a showing of nondiscriminatory reasons for the

5   discharge, the employer satisfies its burden as moving party if it presents evidence of such

6   nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that

7   they were the basis for the termination.  *See Aguilar,* at 850-851; cf. *Guz, supra,* 24 Cal.4th at

8   357.  To defeat the motion, the employee then must adduce or point to evidence raising a

9   triable issue, that would permit a trier of fact to find by a preponderance that intentional

10  discrimination occurred.  *Aguilar,* at  850-851; *Guz,* at 357.

11        Dr. Pettit's wrongful termination claim fails because he cannot demonstrate that there

12  was a discriminatory motive in the decision to terminate his contract or that the County's

13  legitimate, nondiscriminatory reasons were pretextual, as set forth above.  First, Dr. Pettit

14  cannot claim whistleblower protection, or assert a claim based thereon, because he was not an

15  employee for the purposes of Labor Code section 1102.5. *Jacobson, supra*, 357 F. Supp. 2d at

16  1212.  Next, his age discrimination claim fails, as set forth above, because there is no evidence

17  that he was treated differently because of his age.  Finally, his cause of action fails because he

18  cannot demonstrate that the County's legitimate, nondiscriminatory reasons for the termination

19  of his contract were pretextual.

20        It is undisputed that Dr. Smith decided in 2006 to terminate Dr. Pettit's contract short of

21  its natural expiration based on a multitude of concerns including concerns that:  Dr. Pettit

22  appeared to be unsure of himself in the operating room; he was reluctant to get involved in

23  cancer or other complex cases; Emergency Room personnel expressed concerns about his

24  responsiveness to calls from the ER; there were challenges with Dr. Pettit referring to tertiary

25  care centers patients who could normally be handled better within the County system and Dr.

26  Pettit requiring patients with limited access to transportation to report to U.C. San Francisco

27  for evaluation because Dr. Pettit apparently preferred to refer patients to U.C.S.F. rather than

28

1   treat them himself; Dr. Pettit had some patients scheduled to return to see him time and time

2   again when they did not need to be seen in the ENT clinic at all and therefore Dr. Pettit's clinic

3   schedule was filled, in part, with patients who did not require any treatment, a practice called

4   "churning;" Dr. Pettit was unwilling to take on some of the more complex ENT cases, and

5   instead would "dump" these patients on other doctors, or refer them out to outside specialists.

6   Dr. Smith had discussions with Dr. Pettit, who indicated he really wanted to focus on basic

7   ENT care. The County's system, however, did not permit this, since the system takes all

8   comers, and physicians cannot pick and chose patients as they might in private practice. The

9   County's three ENT specialists were called upon to handle whatever medical challenges came

10  through the door.

11         Dr. Pettit is unable to establish that Dr. Smith's legitimate, nondiscriminatory reasons

12  for the decision to terminate Dr. Pettit's contract were pretext; therefore, Dr. Pettit's wrongful

13  termination claim must fail. Moreover, because Dr. Smith was vested with discretion with

14  respect to contracting with medical specialists such as Dr. Pettit, and his exercise of discretion

15  in this case was within the scope of that authority, the immunities set forth in the Government

16  Code shield the County from liability. Cal. Gov. Code §§820.2, 825.2(b). Plaintiff's first

17  cause of action must be dismissed.

18

19                                  VI. CONCLUSION

20         For the reasons set forth herein, and based on the undisputed evidence, the County

21  submits summary judgment should be granted in its favor. In the alternative, the County

22  contends partial summary judgment should be granted on the lone federal law cause of action

23  (age discrimination) and the court should decline to exercise of supplemental jurisdiction on

24  ///

25  ///

26  ///

27  ///

28

---

DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT
C 07 3358 JSW                                                                          17

1  the six state law causes of action.  In further alternative, Defendant seeks partial summary

2  judgment on each and all causes of action as to which there is no triable issue of material fact.

3

4  DATED:  July 18, 2008                        SILVANO B. MARCHESI
                                               COUNTY COUNSEL
5

6

7                                                        / S /
                                           By:_____
8                                              JANET L. HOLMES
                                               Deputy County Counsel
9                                              Attorneys for Defendant
                                               CONTRA COSTA COUNTY
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT
C 07 3358 JSW                                                                    18