RAND L. STEPHENS, SBN 117229
LAW OFFICES OF RAND L. STEPHENS
1155C Arnold Dr. #278
Martinez, CA  94553-4104
(510)232-9335
Fax: (510)232-4633
Email: rand@randslaw.com

RICHARD N. KOSS, SBN 251351
570 El Camino Real, Ste. 150-340
Redwood City, CA  94063-1262
(650)722-7046
Fax: (650)592-3871
E-mail: richard@rkosslaw.com

Attorneys for Plaintiff:
C. ROBERT PETTIT, M.D.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **C. ROBERT PETTIT, M.D.**,<br><br>Plaintiff,<br><br>vs.<br><br>**CONTRA COSTA MEDICAL SERVICES REGIONAL MEDICAL CENTER** and **DOES ONE THROUGH TWENTY**, Inclusive<br><br>Defendants | Case No.: C 07 3358 JSW<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   August 22, 2008<br>Time:  9:00 a.m.<br>The Honorable Jeffrey White |

I.  INTRODUCTION

C. Robert Pettit, M.D., after serving several months as *locums tenens*, was offered and accepted a contract with Defendant Contra Costa County to provide medical services in the county's health facilities to patients of those facilities pertaining to ear, nose, and throat (Otolaryngology).  Dr. Pettit was to be paid $1,250 per four-hour clinic or $312.50 per hour.  The contract's term was to begin on February 1, 2005 and terminate on January 31, 2008, unless terminated sooner as provided in the contract.  All services pertinent to this case were performed at Contra Costa Medical Services Regional Medical Center ("Regional Medical Center").  Dr. Pettit believed his acceptance of the contract insured that Regional Medical Center was obligated

to follow all federal and state laws at all times during his employment with Regional Medical Center. Dr. Pettit, acting on his years of experience in the medical field and the knowledge gained therefrom, observed practices in the Regional Medical Center that he reasonably believed violated appropriate standards of care necessary to ensure patient well being. He engaged in "whistleblowing"; i.e. he reported the violations to his superior, Dr. Martha Corcoran, and later on to the chief of surgery, Dr. Ramon Berguer, and the chief executive officer, Dr. Jeffrey Smith. For his reporting unsafe behavior which he felt violated the appropriate standard of care, Dr. Pettit was rewarded with retaliation from the above doctors, as well as Dr. Liam Keating, his fellow ear, nose, and throat specialist at the Regional Medical Center. Shortly after formally presenting his complaints to Drs. Berguer and Smith, Dr. Smith initiated proceedings to terminate Dr. Pettit's contract with Contra Costa County. The contract was wrongfully terminated as a result of Dr. Pettit's whistleblowing; the termination also violates public policy.

Dr. Pettit alleges six causes of action: (1) violation of whistle-blower statute (Cal. Labor Code §1102.5); (2) breach of contract; (3) violation of public policy (pretext in hiring) (Cal. Labor Code §1102.5); (4) breach of the covenant of good faith and fair dealing; (5) wrongful termination (Cal. Gov't. Code §12940, et seq., Cal. Civ. Code §3287); and (6) age discrimination (asserted under both federal and California law). The age discrimination cause of action is the only cause of action asserted under federal law; all other causes of action are brought solely under California law. However, Plaintiff will move to amend the pleading and add a federal cause of action under the Whistleblowing Protection Act (5 USCS §2302) to the whistleblowing cause of action.

Plaintiff responds to Defendant's motion for summary judgment that some of the "undisputed" facts are in fact disputed and that evidence either discredited or rebutted allow Plaintiff to move forward on his claims against Defendant.

## II. FACTS

A. PROCEDURAL BACKGROUND

Plaintiff filed a "Complaint of Discrimination" against Defendant on January 12, 2007. Dr. Pettit alleges he was "threatened with termination because [he] reported

dangerous/substandard care." (Declaration of C. Robert Pettit ["Pettit Dec."], Ex. 1.) Dr. Pettit reported the substandard care to Dr. Martha Corcoran, his superior, and Dr. Ramon Berguer, chief of surgery at Regional Medical Center.

B.     FACTS PERTAINING TO DR. PETTIT AND HIS CONTRACT WITH CONTRA COSTA COUNTY.

After serving for several months as a *locums tenens* physician, through a temporary agency providing physicians for short-term assignments, C. Robert Pettit negotiated, and was awarded, a contract to provide ear, nose, and throat (Otolaryngology) physician services for Contra Costa County. The effective date of the contract was February 1, 2005, and its expiration date was January 31, 2008 "unless sooner terminated as provided" in the contract. The contract provided for termination "by either party, in its sole discretion on sixty-day advance written notice thereof to the other…" (Ex. 1, p. L-4.) Dr. Pettit was to be paid $1,250 per four-hour clinic or $312.50 per hour. (*Id*., ¶3; Ex. 1, p. P-1.) Approval of the contract was on the Contra Costa County Board of Supervisors' consent calendar January 25, 2005. (Ex. 2, p. 7.) Dr. Pettit believes the contract was approved on January 25, 2005 at the Board of Supervisors' scheduled meeting. The contract was signed on February 1, 2005. (*Id*., ¶3; Ex. 1, p. 5.)

Dr. Pettit performed his job according to the contract. Dr. Pettit never received any written criticism of his work. (*Id.*, ¶4.) On or about August 29, 2006, Dr. Keating was on call. That night, Dr. Keating received telephone calls regarding three patients. Dr. Keating elected not to come to the hospital and see any of the patients that night. Dr. Keating did not see the patients the following day either, as he claimed he had to catch a plane in three hours. Dr. Pettit treated all the patients when Dr. Keating would not come in to see them. (*Id.*, ¶7.) Dr. Pettit, a consultant with the Medical Board of California (*Id.*, ¶2.), felt the level of care given to these patients was below the appropriate standard. He reported these beliefs, which he felt were reasonable, to Dr. Corcoran in an e-mail. (*Id.*, ¶8.)

On or about September 20, 2006, Dr. Corcoran conducted a section meeting. At the meeting, Dr. Pettit's reporting the substandard care was discussed. The discussion between him

1  and Dr. Keating became heated; Dr. Keating threatened Dr. Pettit with "warfare" and told him to
2  "live by the sword, die by the sword."

3  On November 29, 2006, Dr. Pettit delivered a letter to Dr. Berguer. (*Id*., ¶10, Ex. 4.) Dr.
4  Pettit specifically described incidents of what he reasonably considered to be substandard care.
5  (*Ibid.*) For his activities, Dr. Pettit was rewarded with termination of his contract with Contra
6  Costa County.

7  Dr. Smith also states he put the request for termination through in December 14, 2006
8  (Declaration of Dr. Jeffrey Smith ("Smith Dec."), ¶9.) and that he "had never heard or learned of
9  any complaints of regulatory violations or other 'protected' activity by Dr. Pettit." (*Id.*, ¶10.)
10 However, Dr. Pettit delivered a copy of his letter to Dr. Smith before December 1, 2006. (Pettit
11 Dec., ¶10.)

12 Dr. Smith testified the County's Board of Supervisors must authorize the termination
13 before the contract is terminated. (Deposition of Jeffrey V. Smith, M.D. ("Smith Depo."), 53:11-
14 25.) Approval of the termination of the contract was on the Contra Costa County Board of
15 Supervisors' consent calendar January 9, 2007. (Ex. 3, p. 13.) It is notable that the letter was
16 allegedly mailed on the 3rd, almost a week before the request to terminate was before the board
17 of supervisors for approval.

18 On or about January 29, 2007, Dr. Pettit received a letter of termination of the contract.
19 The letter was dated January 3, 2007 and stated the contract would terminate effective March 3,
20 2007. (Pettit Dec., ¶?, Ex. 4.) Defendant states that "[t]he effective termination date for the
21 termination of the contract was actually March 23, 2007. (Smith Dec., ¶11.) However, Dr. Pettit
22 was paid only through March 3, 2007. (Pettit Dec., ¶12.)

### III. SUMMARY OF ARGUMENT

23  
24 Plaintiff submits Dr. Pettit was an employee for the purposes of protection of retaliation
25 from whistleblowing, age discrimination, and wrongful termination. Many of the "undisputed"
26 facts recited in Defendant's motion are in fact disputed. Plaintiff presents evidence to call into
27 doubt these allegations by Defendant and defeat the motion for summary judgment. The
28 common law claim of violation of public policy is not barred by law, because Plaintiff can

1 establish personal liability for retaliation on the part of the employees of the Regional Medical
2 Center.

## IV.  ARGUMENTS AND AUTHORITIES

A.  STANDARD TO DENY MOTION FOR SUMMARY JUDGMENT

The court may not grant a motion for summary judgment "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  After the moving party has met its burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact[,]" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), the moving party "must show that no genuine issue of material fact exists[.]" *Doff v. Brunswick Corp.,* 372 F.2d 801, 805 (9th Cir., 1966). "[I]t is the moving party who carries the burden of proof" on a motion for summary judgment. *Ibid.*  The nonmoving party must then respond by affidavits or otherwise and set forth "specific facts showing that there is a genuine issue for trial".  Rule 56(e), Fed.R.Civ.Pro. It is not necessary that for a material fact is "resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288-289 (1968).  However, if the defendant's motion for summary judgment is properly supported, the plaintiff must present evidence and cannot get to a jury without "any significant probative evidence tending to support the complaint.'" *Id.*, at 290.

The judge's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 249.  The judge is not required to make a finding of fact but rather to determine if there are factual issues that "may reasonably be resolved in favor of either party." *Id.,* at 250.  But "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.,* at 255.

B.   DR. PETTIT IS AN EMPLOYEE AND IS ENTITLED TO PROTECTION UNDER CALIFORNIA LABOR CODE SECTION 1102.5

Defendant's motion correctly points out that a claimant must be an employee to claim "whistleblower" protection under California Labor Code section 1102.5. *Jacobson v. Schwarzenegger,* 57 F.Supp.2d 1198, 1212 (C.D. Cal. 2004). Defendant also correctly asserts Dr. Pettit was providing services pursuant to a contract. In addition, there is a rebuttable presumption that a physician who contracts with a primary care clinic is an independent contractor rather than an employee. Labor C. § 2750.6.

On July 28, 2008, the Ninth Circuit issued a decision in *Johnson v. Riverside Healthcare System*. The facts pertaining to Christopher Johnson's relationship with Riverside Healthcare System, d.b.a. Riverside Community Hospital, located in Riverside, California, are squarely on point with Dr. Pettit's relationship with Regional Medical Center. The court concluded Dr. Johnson was an employee. So is Dr. Pettit.

"Riverside…paid Johnson $ 250 per month to be on call in its emergency room and also compensated him for each trauma patient he treated in an amount not to exceed $ 10,000 per month." *Johnson v. Riverside Healthcare Sys.,* U.S. App. LEXIS 15994, 20 (9th Cir., 2008). Dr. Pettit was paid $1250 per four hour clinic or $312.50 per hour.

> "[A]lthough Johnson's professional services agreement referred to him as a 'contractor,' Riverside retained control over all material aspects of his activities at the hospital. While the parties' affiliations did not contain every the component of the traditional employer-employee relationship (most notably, Riverside was not required to pay Social Security taxes for Johnson or provide him with retirement benefits), Riverside determined the shifts Johnson was responsible to work, the nurses who would be assigned to work with him, and the credentials it would be necessary for Johnson to display when inside the hospital. *Id.*, at 20-21.

Dr. Pettit's contract referred to him as a "contractor". Ex. 1, p. L-1. Regional Medical Center retained the same level of control over Dr. Pettit as Riverside retained over Johnson. Regional Medical Center, through Dr. Corcoran, determined Dr. Pettit's shifts. The Regional Medical Center, not Dr. Pettit, decided which nurses would work with him. Further, the Regional Medical Center had requirements as to what credentials were necessary for Dr. Pettit to work there.

1    Riverside also required Johnson to remain a member in good standing on the Medical
2 Staff. *Id.,* at 21. Dr. Pettit was also so required.

3    The *Johnson* court distinguished this case from *Payne v. Anaheim Memorial Medical*
4 *Center, Inc.,* 130 Cal. App. 4th 729 (2005). In *Payne*, the plaintiff did not work for the hospital;
5 i.e. he was not paid. Payne had no obligation to treat his patients at Anaheim Memorial. Pettit,
6 on the other hand, had to treat his patients within the confines of the Regional Medical Center.
7 Further, Anaheim Memorial did not "exercise any direct control over the manner in which he
8 practices. Instead, the hospital merely provides a facility which a qualified physician may access
9 in connection with providing medical care to his patients." *Johnson, supra,* at 20, citing *Payne*,
10 *supra*, at 748.

11    An employee cannot make a complaint of a violation of Civil Code section 51 against an
12 employer. "Johnson's § 51 claims [were] foreclosed by the fact that his relationship with
13 Riverside was materially indistinguishable from that of an employee." *Johnson* at 22. Similarly,
14 Dr. Pettit was an employee of Regional Medical Center. Therefore, his claim under Labor Code
15 section 1102.5 must be allowed to stand.

C.  DR. PETTIT'S CONTRACT WITH CONTRA COSTA COUNTY WAS NEVER
    TERMINATED BECAUSE DR. SMITH WAS NOT AUTHORIZED TO TERMINATE
    IT.

   "A statement of a cause of action for breach of contract requires a pleading of (1) the
contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and
(4) damage to plaintiff therefrom." *Acoustics, Inc. v. Trepte Constr. Co*., 14 Cal.App.3d 887,
913 (1971). There is no dispute as to the first, second, or fourth prongs of this test. The only
issue to be addressed is whether Defendant breached the contract.
Defendant admits it wrote, addressed, and mailed a letter of termination to Dr. Pettit on January
3, 2007. (Smith Dec., ¶11). However, Dr. Smith was only authorized to write and mail such a
letter upon approval by the County's Board of Supervisors. (Smith Depo., 53:11-25).
Terminating the county's contract with Dr. Pettit was not on the Board's agenda and consent

calendar until January 9, 2007 (Ex. 3, p. 13). The termination obviously could not have been approved before that date.

Restatement Second of Contracts, section 235(2), provides: "When performance of a duty under a contract is due any nonperformance is a breach." Restatement Second of Contracts, § 235(2). Further, "[w]hen performance is due…anything short of full performance is a breach, even if the party who does not fully perform was not at fault and even if the defect in his performance was not substantial." *Id.,* Comment (b). The letter of termination was breach of the contract.

Although the breach of contract claim should lie, Plaintiff is willing to dismiss his claim of breach of the covenant of good faith and fair dealing. "The covenant of good faith and fair dealing applies only to a limited category of situations. First, a valid contract must exist. Next, the claim cannot merely duplicate a breach of contract claim because it would be superfluous." *Guz v. Bechtel Nat., Inc.,* 24 Cal. 4th 317, 351-52 (2000).

D. PLAINTIFF'S CAUSE OF ACTION FOR VIOLATION OF PUBLIC POLICY SHOULD LIE, BECAUSE DRS. KEATING AND BERGUER ARE PERSONALLY LIABLE FOR RETALIATION.

As was established earlier, Dr. Pettit, although paid on the basis of a contract with Contra Costa County, is an employee. *See Johnson, supra,* at 20-21. As such, Dr. Pettit is protected under the Whistleblowing Protection Act, Goernment Code section 1102.5.

Defendant's motion correctly states that for common law causes of action, the County's liability "can *only* be predicated on its vicarious liability, if any, for the wrongful acts of its employees." *Ross v. San Francisco Bay Area Rapid Transit,* 146 Cal. App. 4th 1507, 1514 (2007); Gov. C. § 815.2, subd (b). Plaintiff contends Drs. Keating and Berguer are personally liable for retaliation against Plaintiff and the County is therefore vicariously liable.

When Dr. Pettit reported what he reasonably perceived as Dr. Keating's substandard care to his superior, Dr. Corcoran, he was subsequently harassed and faced retaliation from Dr. Keating. Dr. Keating declared "warfare" on Dr. Pettit at a subsequent ENT section meeting, and began a campaign to discredit him. Further, Dr. Berguer retaliated against Dr. Pettit immediately

after Dr. Pettit presented Dr. Berguer with his letter of November 29, 2006 (Ex. 4.) by recommending to Dr. Smith that Dr. Pettit's contract be terminated.

While Dr. Smith may be immune as claimed in Defendant's motion per Government Code section 821.6, Drs. Keating and Berguer have no such immunity. "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Gov. C. § 820.2.

"The test for determining whether liability attaches individually to the acts of public officers depends upon whether they were either acting without the scope of their authority or were acting within the scope of their authority in a ministerial capacity only. In either event liability would attach. *Jones v. Czapkay*, 182 Cal. App. 2d 192, 198 (1960). If the act is discretionary, there is no individual liability, even though the conduct might be malicious. *Glickman v. Glasner*, 230 Cal.App.2d 120, 125 (1964). Clearly the acts of Dr. Keating in declaring "warfare" and his subsequent actions after Dr. Pettit reported what he reasonably believed was substandard care were not within the scope of his authority as a physician at the Regional Medical Center and not discretionary. Regional Medical Center may have a slightly better argument defending Dr. Berguer's actions after November 29, 2006 as discretionary. However, the immediacy of Dr. Berguer's decision to terminate Dr. Pettit strongly suggests the motive was retaliatory and not discretionary.

Because Drs. Keating and Berguer are personally liable for retaliation against Dr. Pettit for his whistleblowing activities, the County is vicariously liable and the cause of action should be allowed to proceed.

D.  BECAUSE PLAINTIFF NEEDS ONLY TO PROVE TRIABLE ISSUES OF FACT ON HIS CAUSES OF ACTION, PLAINTIFF'S AGE DISCRIMINATION AND WRONGFUL TERMINATION CLAIMS SHOULD NOT BE DISMISSED.

Plaintiff's first cause of action is wrongful termination against Regional Medical Center. The sixth cause of action is age discrimination. The claims invoke protection against discrimination and retaliation from the FEHA, California Government Code section 12940 *et*

1 *seq.*, as well as Title VII, 42 USC § 200, and the Age Discrimination in Employment Act

2 (ADOA), 29 USC §§ 621-634.  Defendant's motion invokes *Ross* to attempt to evade liability for

3 the County.  *Ross* states that a public entity's "liability can *only* be predicated on its vicarious

4 liability, if any, for the wrongful acts of its employees, as authorized by section 815.2,

5 subdivision (a)." *Ross, supra,* 146 Cal. App. 4th at 1514.  "The basic rule[ is] that public entities

6 are immune from liability except as provided by statute." *Ibid.*  The FEHA as well as Title VII

7 are statutory and Defendant's attempt to invoke *Ross* must fail.

8      Turning to the wrongful act of termination and age discrimination, Defendant articulates

9 the methods of proving discrimination by either direct evidence or the "shifting burdens" test of

10 *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Plaintiff concedes he cannot produce

11 direct evidence of violation of the FEHA or Title VII and turns instead to the *McDonnell*

12 *Douglas* test.  Using a test suggested in Defendant's motion, "the plaintiff must provide evidence

13 that (1) he was a member of a protected class, (2) he was…performing competently in the

14 position he held, (3) he suffered an adverse employment action…, and (4) some other

15 circumstance suggests discriminatory motive." *Guz v. Bechtel National, Inc., supra*, 24 Cal. 4th

16 at 355.

17      Dr. Pettit was 69 years old when terminated and a member of a protected class.  He was

18 performing competently.  There are no allegations of malpractice or poor medical care.  Dr. Pettit

19 suffered both financially and emotionally from the termination.

20      At issue is whether other circumstances suggest a discriminatory motive.  The events of

21 August 29, 2006 and subsequent to that date suggest such a motive.  Defendant's motion states:

22 "It is undisputed that Dr. Smith decided in 2006 to terminate Dr. Pettit's contract short of its

23 natural expiration based on a multitude of concerns…"  That is the testimony of Dr. Smith; it is

24 not undisputed.  Dr. Pettit had not received any negative feedback on his work prior to August

25 29, 2006.  Once he reported the substandard care to Dr. Corcoran, his status at Regional Medical

26 Center began to change.  Suddenly, Dr. Corcoran was not satisfied with his performance; Dr.

27 Keating declared "warfare" on him at a staff meeting; Dr. Pettit brought several instances of

28 substandard care to Dr. Berguer's and Dr. Smith's attention, immediately after which Dr. Pettit's

contract was terminated. No investigation was done by Dr. Berguer as to the allegations in Dr. Pettit's letter. No discipline was meted on the younger Dr. Keating. Instead Dr. Pettit was terminated.

The test does not provide that a discriminatory motive *must* be proven, only that "some other circumstance suggests discriminatory motive." *Guz* at 355. Other circumstances and events clearly suggest that there may have been a discriminatory motive in Dr. Berguer's and Dr. Smith's actions and that Dr. Smith's "undisputed" facts are not facts at all, but merely allegations which are contradicted by Dr. Pettit's declarations and are ultimately for a jury to decide.

F.   IF THE FEDERAL CAUSE OF ACTION FOR AGE DISCRIMINATION FAILS, THE COURT SHOULD NOT REMAND THE CASE TO STATE COURT.

Even if the federal cause of action for age discrimination fails, the court should not remand the remaining causes to state court. First, the court is quite familiar with state law. One of the important decisions in deciding this motion was very recently made in federal, not state, court. *See Johnson v. Riverside Healthcare Sys.,* U.S. App. LEXIS 15994, 20 (9th Cir., 2008).

Second, the court is not mandated to decline to exercise jurisdiction over the remaining state law claims. *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988). Here, the process of beginning again to litigate in state court will not lead to convenience or fairness, but remaining in this court will lead to a more prompt and equitable resolution of the case.

Finally, Plaintiff will move to amend the pleading and add a federal cause of action under the Whistleblowing Protection Act (5 USCS §2302) to the whistleblowing cause of action.

V.  CONCLUSION

Plaintiff has clearly established there is a dispute to each material fact presented by Defendant. That is the only burden Plaintiff needs to meet. Defendant has failed to meet its burden to establish there are undisputed facts on any of the material facts and relevant issues.

However, should the court find Plaintiff's age discrimination claim fails and also decline to allow Plaintiff to amend the whistleblowing cause of action to add a federal cause of action, Plaintiff will accept the proposed order as written by Defendant.

1
2
3
4   Dated this August 4, 2008.
5
6                                                            /s/
7                                            _____
8                                            RICHARD N. KOSS, Attorney for
                                             Plaintiff, C. ROBERT PETTIT, M.D.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT                                    - 12
*Pettit v. Contra Costa Medical Services Regional Medical Center*            Case No. C 07 3358 JSW